**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **OPULENT TREASURES, INC.,** | |
| Plaintiff, | |
| v. | **Civil Action No.: 6:22-cv-00037** |
| **WAYFAIR, LLC., AMALFI DÉCOR, LLC, SAMPAD ENTERPRISES CO. LTD, BRIAN WU, MARIA PAPAGEORGE, TOM WU, TERESA CHANG, AND DOES 1 THROUGH 10,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff Opulent Treasures, Inc. ("Opulent" or "Plaintiff") files this Complaint for damages and injunctive relief against Defendants Amalfi Decor, LLC, Sampad Enterprises Co. Ltd, their respective founders, Brian Wu, Maria Papageorge, Tom Wu, and Teresa Chang, their enablers, Wayfair, LLC., and Does 1 through 10 (collectively, the "Defendants").

## NATURE OF THE ACTION

1.      This is a civil action for trade dress infringement, trade dress dilution, false designation of origin, unfair competition, unjust enrichment, and request for injunctive relief arising out of Defendants' unauthorized and infringing use of Opulent's trade dress for cake stands and other décor items. As described more fully below, upon information and belief, Defendants have knowingly, willfully, or intentionally infringed on Opulent's trade dress, damaged Opulent's business reputation, and subjected Opulent to unfair competition, lost profits, and other monetary damages. The infringement is ongoing, causing Opulent to suffer irreparable harm.

2.      Opulent sues under the Lanham Act, including 15 U.S.C. §§ 1114(1) and 1125(a) and (c) *et seq.*  (Infringement, False Designation of Origin and Unfair Competition and Dilution); 15 U.S.C. § 1116 (Injunctive Relief), 15 U.S.C § 1117 (Attorney's Fees and Treble Damages), 15 U.S.C. § 1118, the Texas Business and Commerce Code § 16 *et seq.*, and common law.

### PARTIES

3.      Opulent is a corporation organized and existing under the laws of the state of California, with its principal place of business in El Segundo, California. It sells its products through its website Opulentreasures.com as well as through other e-commerce platforms including Wayfair.com, Amazon.com, and eBay.com. It also sells its products to leading retail stores such as TJX Corp., including its affiliates Home Goods, TJ Maxx, Marshalls, Winners, Home Sense Canada and TK Maxx Europe. Opulent is and has been marketing and selling Opulent's Designs[1] in Texas and throughout the United States in interstate commerce continuously since 1995.

4.      On information and belief, Defendant Wayfair, LLC is a Delaware corporation with its principal place of business at 177 Huntington Ave., Boston, MA 02115. This defendant has appointed Incorporating Services, Ltd., 3500 South Dupont Highway, Dover, DE 19901, as its agent for service of process.

5.      On information and belief, Defendant Amalfi Décor, LLC ("Amalfi Décor") is a limited liability company originally organized under the laws of the state of California, but recently converted out under the state laws of Nevada, with its office and principal place of business at 4460 South Arville Street, Suite 5, Las Vegas, NV 89103. This defendant has appointed Telos Legal Corp., 318 N. Carson Street Suite 208, Carson City, NV 89701, as its agent for service of process.

---

[1] Opulent's Designs mean federally, and common law protected trade dresses which Defendants infringe.

6.      Upon information and belief, Defendant Brian Wu is an individual doing business in this judicial district and is an owner, officer, director, and/or managing agent of Amalfi Décor and the signatory to the settlement agreement with Opulent containing binding promises that all production, promotion, and sale of certain Opulent designs had ceased as of at least March 2018. On information and belief, Brian Wu has personally profited from and overseen the resumed use of Opulent's protected designs on products.

7.      Upon information and belief, Defendant Maria Papageorge is an individual doing business in this judicial district and is a co-owner, officer, director, and/or managing agent of Amalfi Décor and the signatory to the settlement agreement with Opulent containing binding promises that all production, promotion, and sale of certain Opulent designs had ceased as of at least March 2018. On information and belief, Maria Papageorge has personally profited from and overseen the resumed use of Opulent's protected designs on products.

8.      Defendant Sampad Enterprises Co. Ltd. ("Sampad") is a foreign company organized and existing under the laws of Taiwan, with its office and principal place of business in Shenzhen, PRC.

9.      Upon information and belief, Defendant Tom Wu is an individual doing business in this judicial district. On information and belief, Tom Wu is a co-owner, officer, director, and/or managing agent of Sampad and has personally profited from and overseen the resumed illegal manufacturing and use of Opulent's protected designs on products.

10.     Upon information and belief, Defendant Teresa Chang is an individual doing business in this judicial district. On information and belief, Teresa Chang is a co-owner, officer, director, and/or managing agent of Sampad and has personally profited from and overseen the resumed illegal manufacturing and use of Opulent's protected designs on products.

11.     The true names and capacities of Defendants DOES 1 through 10, inclusive, whether individuals, corporate, associates, or otherwise, are unknown to Plaintiff, who therefore sues such defendants by such fictitious names.

12.     Plaintiff will seek leave of this Court to amend this Complaint to show the true names and capacities of DOES 1 through 10, inclusive, when the same have been ascertained.

13.     On information and belief, Defendants operate Wayfair.com, Amalfidecor.com, and Amalfidecor.com.au.

14.     Defendants are the manufacturers, sellers, and/or distributors of cake stands and other home décor items which are infringing on Opulent's Designs.

15.     Defendants regularly conduct and transact business in Texas, throughout the United States, and within the Western District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over all aspects of this action under 15 U.S.C. § 1051 et seq. ("Lanham Act") and 28 U.S.C. §§ 1331, 1337, and 1338.

17.     This Court has pendent jurisdiction over the Texas statutory and common law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the other claims in the action over which the Court has original jurisdiction that they form part of the same case or controversy.

18.     This Court has personal jurisdiction over Defendants through Defendants transacting, doing, and soliciting business in this District, because a substantial part of the relevant events occurred in this District, and because Defendants have infringed, contributed to the infringement of, or actively induced others to infringe Opulent's Designs in this District.

Defendants also continue to infringe, contribute to the infringement of, or actively induce others to infringe Opulent's Designs in this District. Defendants have purposefully availed themselves of the privilege of doing business in this District and directed their conduct into this District because Defendants conduct continuous and systematic business in this District, place infringing products in the stream of commerce directed to residents of this District, derive commercial benefits from the sale of infringing products and cause injuries to Opulent within the Western District of Texas. Upon information and belief, Defendants operate brick and mortar stores and/or distribution centers located in this District (Wayfair: 4500 S Pleasant Valley Rd, Austin, TX 78744) where they sell, promote, and distribute infringing designs.  In addition, Defendants operate websites accessible by Internet users in this District and offer their services and products to residents of Texas and this District. The infringing products that Defendants advertise, offer, and make available to purchasers through their websites, can be ordered by and shipped to purchasers in Texas and this District. Because the Defendants voluntarily engaged in tortious acts in Texas and made purposeful contacts with Texas, the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

19.    Venue is proper under 28 U.S.C. §§ 1391(b)-(c) and 1400(a) because Defendants transact business in this District, a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial District, Opulent has been injured in this judicial District, and, under 28 U.S.C. § 1400(b), Defendants committed acts of infringement in this judicial District.

## FACTS SUPPORTING CLAIMS

### A. The Opulent Brand and Opulent Trade Dress

20.     Since 1995, Opulent has been engaged in the design, manufacturing, distribution, marketing, offering for sale, and sale of elegantly and uniquely crafted entertainment and home décor pieces, including, but not limited to, chandelier dessert stands, candelabras, and lamps. In creating its products, Opulent has always sought to add charm, elegance, and stunning beauty to each customer's special occasions and celebrations.

21.     Opulent is the creator of the "Chandelier Cake Stand," "Chandelier Cupcake Holder," "Chandelier Candle Holder" and many other distinct trade dresses, all protected under federal or common trademark law (collectively "Opulent's Designs"). These products did not exist before Opulent introduced them to the marketplace.

22.     Since its founding, the popularity of Opulent's Designs has steadily grown throughout the United States. Its unique decorative pieces are coveted by wedding and event planners as well as individual consumers looking to bring a sophisticated look to their events, gatherings, and homes.

23.     In recent years, Opulent's commitment to quality and beauty has helped propel the Opulent Treasures® brand to an overwhelming level of popularity among consumers. After more than twenty years of business, Opulent's loyal customer base spans not only across the United States, but the entire globe.

24.     In fact, just through the trend-ideas sharing website, Pinterest.com, Opulent's "pins" have engaged with nearly thirty million individuals. Additionally, Opulent has received unsolicited media attention several times from outlets including Romantic Homes, Buzzfeed, Prime Living, C Magazine, U.S. Weekly, among others. Opulent's products have also been featured on multiple television networks, including QVC, Bravo, Nickelodeon, HGTV, as well as

on programs such as the Today Show, The Real Housewives, Keeping Up With The Kardashians, and Vanderpump Rules.

25.     At first serving specialty stores, boutiques, and event planners, Opulent has grown into a multi-million-dollar business, shipping up to 40,000 pieces per month, and experiencing millions of dollars per year in sales via TJX Corp., including its affiliates Home Goods, TJ Maxx, and Marshalls.

26.     Opulent's products are distributed and sold to consumers through authorized retailers throughout the United States, including Texas, at point-of-sale on the Internet (e-commerce platforms such as Wayfair, Houzz, Amazon, and QVC), and through its own website Opulenttreasures.com.

27.     Opulent has also been enrolled on the Amazon Brand Registry since June 2017 to identify its registrations and trademark rights.

28.     Opulent has acquired trade dress rights under the Lanham Act, as well as under state statutory and common law, in the overall look, design, arrangement, and appearance of its cake stands and other décor items.

29.     In connection with some of its best-selling products, Opulent has used a variety of legally protected trademarks on and in connection with the advertisement and sale of its products, including, but not limited to, those detailed in this Complaint.

30.     Opulent owns trademarks for Opulent's dessert table, tiered dessert stand, and candelabra which are registered in the U.S. Trademark Office (Reg. Nos. 5,912,235; 4,729,340; 4,729,341; and 4,733,374) (collectively, "Opulent's 3D Marks").

31.     Opulent also owns a literary mark for OPULENT TREASURES® (Reg. No. 4,381,949).

32.      Opulent's 3D Marks are identified and described in **Table 1**, below. The designs depicted below consist of non-functional design elements, are not essential to the use or purpose of the products, do not affect their cost or quality, and are not the reason the products work. Moreover, the ornamental aspects of the arrangement and combination of the features are arbitrary and non-functional.

**Table 1**

| REG. NUMBER | TRADEMARK | REG. DATE | FIRST USE IN COMMERCE | GOODS |
|---|---|---|---|---|
| 5,912,235 (Principal Reg.) |  | November 19, 2019 | August 2006 | IC 021: Dessert serving trays, tiered serving trays for domestic purposes; tiered tray serving platters |
| 4,729,340 (Supplemental Reg.) |  | April 28, 2015 | August 2006 | IC 021: Dessert serving trays, tiered serving trays for domestic purposes; tiered tray serving platters |
| 4,729,341 (Supplemental Reg.) |  | April 28, 2015 | August 2006 | IC 020: Tables, Display tables, tables for displaying desserts |

| 4,733,374 (Supplemental Reg.) | | May 5, 2015 | August 2006 | IC 021: Candle holders; Non-electric candelabras |
| --- | --- | --- | --- | --- |

33.     Opulent is the exclusive licensee of Opulent's Designs and Opulent's 3D Marks. The key to Opulent's success is the high quality and reputation of its products, which are closely associated by the public with Opulent's Designs. Opulent has used Opulent's Designs continuously as the main identifier of its elegant and distinct décor pieces.

34.     Opulent has extensively and continuously promoted and used its trade dress designs for years in the United States and in Texas, and as explained in more detail below, has acquired trade dress rights in its famous designs. In connection with marketing and selling Opulent's Designs, Plaintiff has extensively used, displayed, and advertised the non-functional features of the Opulent's Designs that comprise the trade dresses of said designs. In the minds of the public, the primary significance of these non-functional and distinctive features is to identify the source of the product, and Opulent Designs have acquired secondary meaning. The distinctive and non-functional features also identify that the product is reliable and of the high quality associated with Opulent.

35.     Opulent's products, depicted in **Table 2** below, are Opulent's most recognizable trade dresses. For example, one of the most iconic is "Chandelier Cake Stand," federally protected by U.S. Reg. No. 5,912,235. Said Chandelier Cake Stand consists of a decorative display table

9

embodying these features: ornate paneling surrounding the circumference of the tabletop; beads and crystals encircling the table and dangling from the ornate paneling; and a multi-grooved fluted base. The ornate paneling with or without jewels that is part of Opulent's protected design and is what makes Opulent's trade dress recognizable to consumers. Customers associate this distinctive design with Opulent's recognized quality.

**Table 2**



| | |
|---|---|
| Chandelier Round Cake Stand<br>Trademark Reg. No.: 5,912,235 | Chandelier Square Cake Stand |
| Chandelier Candle Holder<br>Trademark Reg. No.: 4,733,374 | Chandelier Cupcake Stand<br>Trademark Reg. No.: 4,729,340 |

36.     Additionally, Opulent's Designs have become famous and a well-known indicator of the origin and quality of Opulent's décor products. As explained above, Opulent has used, promoted, marketed, and made significant sales of its designs.

37.     Attached as Exhibit A is a copy of the Certificates of Registration for Opulent's 3D Marks and OPULENT TREASURES® literary mark along with a current printout of the electronic status page for these registrations downloaded from the USPTO database at http://tsdr.uspto.gov.

38.     Opulent is an applicant in three applications pending on the USPTO's Principal Register for Opulent's Chandelier Cupcake Stand, Chandelier Candle Holder, and Ornate Trim Serial Nos. 90830532, 90839684, and 97174285 respectively.

39.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent's U.S. Reg. No. 5,912,235 is *prima facie* evidence of the validity of the Opulent's trade dress in Opulent's Chandelier Cake Stand.

40.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent's Chandelier Cake Stand registration is prima facie evidence of Opulent's ownership of the Opulent trade dress.

41.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent Chandelier Cake Stand registrations is prima facie evidence of Opulent's exclusive right to use the Opulent trade dress in the United States commerce.

42.     Together with the rights granted by Opulent's 3D Marks, Opulent has strong common law rights in its trade dresses (the Opulent's Designs depicted in **Illustration 1**) through its extensive use and promotion of them in commerce. Opulent is and has been marketing and selling the Opulent's Designs in Texas and in this District at hundreds of brick-and-mortar locations in Texas and across the United States such as TJ Maxx, Home Goods, Marshalls, and

through e-commerce distributors. Opulent has also been diligent in protecting and enforcing Opulent's Designs.

43.     Opulent's Designs serve as a unique source identifier for Opulent's products. Opulent prominently uses and displays its federally registered OPULENT TREASURES® Mark on its décor pieces including product packaging, point-of-sale displays, and on Opulent's advertising, promotional materials, and website (including social media).

44.     Opulent has invested time, effort, and hundreds of thousands of dollars in marketing to build the fame, reputation, and goodwill of Opulent's Designs.

45.     Opulent's Designs are distinctive designations of the source of origin of its products.

46.     Opulent's Designs are uniquely associated with Plaintiff and its high-quality goods. These trade dresses are assets of incalculable value as symbols of Opulent, its quality of goods and its goodwill. These trade dresses have acquired secondary meaning and have become famous in the United States, in Texas, and in this District.

47.     Opulent's Designs are well-known and were well-known *before* Defendants' infringement began.

48.     As a result of Opulent's extensive advertising and promotional efforts and its continuous use, Opulent's Designs are distinctive and widely recognized by the relevant consuming public of Texas and the United States as a designation of source of the involved goods. As a result, Opulent owns federal, common law, and statutory trade dress rights in ornamental design and appearances of all Opulent's Designs.

**Opulent's Relationship with Defendants Tom Wu, Brian Wu, Teresa Chang, and Maria Papageorge (collectively, "Amalfi Group")**

49.     In or around April 2004, Opulent established a business relationship with Sampad Enterprise Co., Ltd. ("Sampad"), a Taiwanese Limited Company. Upon information and belief, Tom Wu and Teresa Chang are the owners, officers, directors, and/or managing agents of Sampad.

50.     Opulent engaged Sampad to manufacture Opulent's products which Opulent designed.

51.     In or around September 2006, Opulent worked closely with Tom Wu and Sampad to manufacture additional Opulent designed products including cake stands, dessert stands, and candelabras, among others. This arrangement increased Sampad's production of Opulent's products to several million units, including those bearing the Opulent Treasures® mark.

52.     On or around February 1, 2012, attorneys for Opulent met with Tom Wu and Teresa Chang in El Segundo, California to discuss Opulent's trademark rights in the design of its products, including Opulent's ownership of and intention to register Opulent's 3D Marks. At the end of this meeting, Tom Wu, and Teresa Chang verbally agreed that neither they nor Sampad would reproduce or modify Opulent's original designs for sale or use with Sampad's other customer accounts. Trusting Sampad, Opulent continued to engage Sampad as its manufacturer.

53.     On or around November 15, 2012, Opulent and its attorneys met yet again with Tom Wu to discuss Opulent's product designs, Opulent's federal and common law trademark rights in same, and how Opulent's Designs should not be produced or altered for use by other customers of Sampad. Again, Tom Wu agreed that neither he nor Sampad would reproduce or alter Opulent's Designs for sale or use with Sampad's other customer accounts. Again, believing these promises, Opulent continued to engage Sampad as its manufacturer.

13

54.     In or around August 11, 2014, Opulent met with Tom Wu and his son, Brian Wu, to discuss a possible e-commerce venture between the parties. Brian Wu, a foreign national who had then recently graduated from an American college, was looking to establish a small business in the United States. Opulent agreed to assist Brian Wu with his venture in good faith based on the existing business relationship with Tom Wu, Teresa Chang, and Sampad. However, being wary of possible misappropriation of Opulent's Designs in this new venture, Opulent again restated to Tom Wu and Brian Wu that Opulent had federal and common law rights in its product designs including those of Opulent's 3D Marks, and that its designs should not be sold, produced, or altered for sale to any existing or future customers of Sampad or Brian Wu's new venture. Again, the parties reached a verbal agreement that Opulent's Designs would not be reproduced or changed for sale or use other than for Opulent.

55.     Upon information and belief, on or about January 2015, Brian Wu and an unknown business partner incorporated Platinum Home Designs, Inc. Upon information and belief, Maria Papageorge, Brian Wu's girlfriend, became an owner, officer, and/or managing agent of Platinum Home Designs, Inc. after the entity's incorporation.

56.     About one year after the 2014 meeting with Tom Wu and Brian Wu, in or around October 2015, Opulent Treasures discovered the manufacture, production, importation, distribution, advertisement, marketing, offer for sale, and/or sale of products that bear designs substantially and/or confusingly similar (the "Accused Products") to that of Opulent designs with federal and common law rights.

57.     Upon information and belief, Defendants Sampad, Tom Wu, and Teresa Chang manufactured and supplied the Accused Products to Platinum Home Designs, Inc., Brian Wu, and Maria Papageorge. Sampad understood Opulent's creative design process and possessed the

manufacturing know-how for Opulent's Designs, so Sampad was able to easily manufacture substantially and/or confusingly similar products for Platinum Home Designs, Inc.

58.     To hide the illegal sales, Sampad formed a new company and started shipping the Accused Products under a new name "Paramount International."

59.     On or about January 2016, Opulent sent cease and desist letters to Brian Wu and Platinum Home Designs, Inc. regarding sales of unauthorized reproductions of Opulent's registered and proprietary designs.

60.     Platinum Home Designs, Inc. then ceased operations. But infringement of Opulent's Designs continued under a new brand called Amalfi Décor. Amalfi Décor, LLC, a Defendant in this lawsuit, was formed on or about May 2016 in California. Upon information and belief, Defendants Brian Wu and Maria Papageorge are owners, officers, and/or managing agents of Amalfi Décor and are an active, moving, conscious force behind the infringing activities alleged herein.

61.     Upon information and belief, Defendants Sampad, Tom Wu, and Teresa Chang continue to manufacture and supply the Accused Products for Defendants Amalfi Décor, Brian Wu, and Maria Papageorge.

62.     Platinum Home Designs and Amalfi Décor were founded on the business model of reproducing Opulent's Designs and weaking the Opulent brand. For example, some designs that Amalfi Décor claims to have created were already being manufactured by Sampad and sold by Opulent before Platinum Home Designs and Amalfi Décor were incorporated as entities. Amalfi Décor further claims on its website that in less than four years, it has grown to be an industry leader. Even if this were true, it was only possible by copying or modifying Opulent's Designs that were produced by their shared manufacturer, Sampad. Sampad's employees further aided in the

misappropriation by forwarding Brian Wu information on which designs and quantities Opulent's corporate customers were ordering thereby revealing which designs were in demand.

63.    In or around 2016, Amalfi Décor contacted Opulent's corporate buyers attempting to sell them products substantially and/or confusingly similar to Opulent's designs under the infringing Amalfi Décor brand. Moreover, Amalfi Décor contacted longtime Opulent customers offering them goods and discounts to woo them from Opulent towards Amalfi Décor. Some who purchased from Amalfi Décor knew that Amalfi Décor was dishonestly built upon Opulent's creativity, incalculable investment, and established market reputation. Upon information and belief, in or around mid-2017, Amalfi Décor, in an effort to weaken the Opulent brand, had Opulent suspended from Pinterest by claiming that Opulent was infringing on Amalfi Décor's products.

64.    After receiving cease and desist letters from Opulent, Amalfi Décor decided to attack first and sued Opulent and its owner Carol Wilson in not one, but two separate venues: the Superior Court of California and the United District Court for Central District of California. Amalfi Group sought, *inter alia*, a Declaratory Judgment of non-infringement and alleging that the designs were not Opulent's but that of Amalfi Group's (hereinafter, "California Litigation").

65.    On or about March 21, 2018, the parties to the California Litigation reached a purported agreement whereby Amalfi agreed not to manufacture, advertise, and sell certain designs as outlined in the agreement. But Amalfi Group did not wait long to start production and sales of the knock-off designs that belonged to Opulent. In an unsophisticated manner, Amalfi Décor, in some cases, combined elements from several of Opulent's Designs or arranged Opulent's Designs in a new configuration to conceal flagrant infringement.

66.    Amalfi Group is a direct competitor and has copied Opulent's Designs to exploit Opulent's goodwill and reputation in the market for high quality original products. Amalfi Group's

actions have gutted Opulent while Amalfi Group continues to operate unabated selling unauthorized reproductions of Opulent's Designs.

67.     Moreover, Opulent believes and herein alleges that Amalfi Group has acted in bad faith and that its acts have misled and confused and were intended to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Accused Products with Opulent.

68.     Amalfi Décor's products are or were available for purchase on at least Amalfi Décor's own websites, Wayfair, Amazon, Walmart, Ebay, Macy's, Houzz, Pinterest, Faire, Instagram, Facebook, Catch, 2day-Deliver, and Sears.

69.     Upon information and belief, Amalfi Group has sold additional products that infringe upon Opulent's intellectual property rights. Opulent may seek to amend as additional information becomes available through discovery.

70.     **Illustration 1** below shows a side-by-side comparison of the infringing designs copied by Amalfi demonstrating the confusing similarity between Opulent's Designs (right) and the Accused Products (left). Known Amalfi Group product numbers for the Accused Products are listed within **Illustration 1**.

**Illustration 1**

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 1 |  CS310SG, CS310SR, CS310SS, CS310SC, CS310SW, CS310SPK, CS310STB, CS310SLA, CS310SBL, CS310SLM, CS330SY, CS330SG, CS330SR, CS330SS, CS330SW, CS330SPK, CS330SRED, LED001AW, LED001AG, LED001AS |  Trademark Reg. No.: 5,912,235 |
| 2 |  CS301VG, CS301VS, CS301VR, CS301VW, CS301VC, CS301VGX, CS301VRX, CS301VSX, CS326VG, CS326VC, CS326VR, CS326VS, CS326VW, CS310SGX, CS310SSX, CS310SRX CS307AS, CS307AG, CS307AWG, CS307AB, CS307AGX, CS307ASX, CS307ARX, 301/326VG 301/326VC, 301/326VR, 301/326VS, 301/326VW |  (Ornate trim design)     (Base design) Reg No.: 5,912,235 |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 3 |  CS309AG, CS309AS, CS331S CS331G, CS331B, CS331W |  (Tabletop design)  (Base design 1)    (Base design 2) |
| 4 |  CS311SG, CS311SR, CS311SS, CS311SW, CS311SPK, CS311SGX, CS311SRX, CS311SSX |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 5 | <br><br>CS308AGX, CS308ARX, CS308ASX, CS308AS, CS308AWG, CS308AG |  |
| 6 | <br><br>CS304VG, CS304VR, CS304VS, CS304VGX, CS304VRX, CS304VSX | <br><br>(Structural design)      (Base design) |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 7 | CS302MG, CS302MW, CS302MR, CS302MS, CS302MWG | (Ornate topper)    (Structural design) (Scalloped cupcake holders) (Base design) |





| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 8 | CS300MG, CS300MS | (Candle holder design) (Cupcake holder design) (Base design) |
| 9 | CS306AG, CS306AS, CS306AW | |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 10 |  CS329G, CS329S, CS329W, CS329R, CS335G, CS335R, CS335S, CS335W, CS334G, CS334R, CS334S, CS334W |  |
| 11 |  CS316AG, CS316AS, CS316AR, CS316AW, CS316APK |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 12 |  CS336VG, CS336VW, CS336VS |  |
| 13 |  CS332G, CS332S, CS332R, CS332W, CS332PK |  |
| 14 |  CS328GX, CS328RX, CS328SX, CS328G, CS328R, CS328S, CS328W, CS328RED |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 15 | <br>CS303VG, CS303VS, CS303VR, CS303VC, CS303VW, CS303VGX, CS303VRX, CS303VSX |  |
| 16 | <br>CJ35SX, CJ35G, CJ35RG, CJ30RG, CJ30G, CJ30S, CJ25G, CJ25RG, CJ25SX |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 17 | CS323GX, CS32RX, CS323SX |  (Tabletop design)  (Base design) |
| 18 | CS313VG, CS313VR, CS313VS, CS312VG, CS312VGX, CS312VR, CS312VRX, CS312VS, CS312VW, CS305VGX, CS305VRX, CS305VSX |   (Base design) |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 19 |  CS305VG, CS305VR, CS305VS, CS305VW, CS305VC, CS305VY, CS305IW, CS305VITB, CS305VILA, CS305ILA, CS305VIPK, CS305IPK, CS305VRED, CS305IBL, CS305ILM, CS312VR |   (Base design) |
| 20 |  CD205VG, CD205VS |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 21 | <br>CD208RS, CD208RG |  |
| 22 | <br>CD206MG, CD206MS |  |
| 23 | <br>CD210VG, CD210VS |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 24 |  CD214G, CD214R, CD214S |  |
| 25 |  CD212VG, CD212VS |  (Floral banding design) |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 26 | <br><br>CD203VG, CD202VS, CD203VW | <br>(Inverted trim design)<br><br><br>(Base design) |
| 27 | <br><br>CD207SG, CD207SW, CD207SS | <br>(Structure and inverted trim design) |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 28 | <br>CD213MG | <br>(Upper leaf design)      (Base design) |
| 29 | <br>CD211TR, CD211TG, CD211TS, CD211TC, CD211TW | <br>(Upper design)<br><br>(Base design) |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 30 |  CD209JG, CD209JS |  (Candleholder design)   (Base design) |
| 31 |  CH100TB, CH100TS, CH100TCW, CH100TCPW, CH101TCPW |  |

| Row | AMALFI GROUP ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|-------------------------------|-------------------|
| 32 |  CH107TW, CH113TB, CH113TPK, CH113TW, CH113TLA |  |
| 33 |  ST006VG, ST006VR, ST006VS, ST006VW |  |
| 34 |  |  |

**Wayfair's Enablement of Infringement of Opulent's Designs by Amalfi Group and Other Sellers and Manufacturers**

71.     Wayfair has become so overrun with counterfeit products—and its meager efforts to address this problem have been so ineffective—that counterfeit products are now leaving Wayfair warehouses all over the United States at an alarming rate. Wayfair knowingly sells such products, leaving U.S. consumers and intellectual property ("IP") owners to suffer while Wayfair profits handsomely, adding to its multibillion-dollar annual revenue and valuation. Wayfair's ineffective processes to stop the sale of knock-off products do not apply to unregistered IP, such as trademarks protected by common law, and are easily circumvented by Wayfair's business partners. Making matters worse, IP owners who try to defend themselves and their valued customers by utilizing Wayfair's procedures face lip service, long delays, growing frustration, and significant expense—all to virtually no avail.

72.     Wayfair serves as an e-commerce platform that enables infringement of Opulent's Designs by not only Amalfi Group, but other sellers with products featuring the same design features that make Opulent's products distinct. Wayfair, Amalfi Group, and the other sellers and manufacturers profit off of Opulent's marketplace reputation for quality products while selling inferior products. Like Amalfi Group, many manufacturers and sellers on Wayfair combine elements from several of Opulent's Designs or arrange Opulent's Designs in a new configuration to conceal flagrant infringement.

73.     Opulent has submitted numerous requests to Wayfair to remove the infringing products, but Wayfair's procedures have been ineffective at slowing or eliminating the continued sales of infringing products. Wayfair's large internet presence also means that the infringing products are available for sale around the world on Wayfair's international webpages, including in Germany, Canada, and the United Kingdom.

34

74.     As the sales of the knock-off products increased on Wayfair, Opulent's sales were impacted. In or around August 2019, Wayfair took the initiative to remind Opulent that its sales were declining on the platform and suggested that Opulent implement a discount to increase sales. Making matters worse for Opulent, Wayfair listed and continues to list genuine Opulent products, Amalfi Group's infringing products, and infringing designs from other manufacturers all under Wayfair's private labels making it confusingly appear that the designs are all from the same brand and manufacturing source. Opulent's sales were impacted by the proliferation of these knock-off products available on Wayfair's website, not the price of Opulent's products as Wayfair claimed. By promoting Opulent's Designs alongside the infringing products, Wayfair knowingly enables continued infringement of Opulent's trade dresses causing confusion for the consumer.

75.     Wayfair's dishonest tactics not only mislead consumers but function to increase traffic to their website. Wayfair uses images of Opulent products to entice potential consumers to their website and then misleads or confuses the consumer by displaying a knock-off infringing design, or by simply directing the consumer to Wayfair's website. In some cases, an image of an Opulent product on Pinterest will link to an Amalfi Décor branded product or a non-branded Amalfi Décor/Sampad manufactured product sold under one of Wayfair's private labels. In other instances, an image of an Opulent product on Pinterest will direct consumers to Wayfair's general kitchen and tabletop product or home décor categories without any trace of the Opulent product that led the consumer to Wayfair's website.

76.     **Illustration 2** below shows a side-by-side comparison of the infringing designs available on Wayfair that are reproduced by Amalfi Group and other sellers demonstrating the confusing similarity between Opulent's Designs (right) and the Accused Products (left).

**Illustration 2**

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 1 |  | |

Reg. No.: 5,912,235

(Base design used by some of the
Accused Products)

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 2 | | |
| 3 | | |



| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 4 |  | <br>(Floral banding design) |
| 5 |  |  |

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 6 | | (Candle holder design) (Cupcake holder design) (Base design) |
| 7 | | |



| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 8 | | |



(Ornate topper)   (Structural design)

(Scalloped cupcake holders)

(Base design)



| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 9 | | (Structural design)    (Base design) |
| 10 | | |

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 11 |  |  |
| 12 |  |  (Floral banding design)  (Base design) |
| 13 |  |  |

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 14 | | |
| 15 | | |



(Floral banding design)

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|-----|----------------------------------|-------------------|
| 16 | | |
| 17 | | |



| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 18 |  |  |
| 19 |  |  |
| 20 |  |  |

| Row | WAYFAIR ENABLED ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|---|
| 21 |  | See numerous designs listed above. |

## <u>DEFENDANTS' INFRINGEMENT OF OPULENT'S DESIGNS</u>

77.     Defendants have purposefully offered for sale, sold, distributed, imported and/or re-sold, advertised, marketed, or promoted, and continue to offer for sale, sells, distributes, imports and/or re-sells, advertises, markets, or promotes the household products listed in **Illustrations 1 and 2** that are confusingly similar to, and dilute, Opulent's Designs. Defendants use Opulent's Designs in commerce without Opulent's authorization.

78.     According to their websites, Defendants supply home décor and home furnishings. Upon information and belief, Wayfair, or their affiliates, import and/or re-sell the Accused Products into the United States and distribute them to their warehouses across the country, including to those in the Western District of Texas where the Accused Products are advertised, promoted, offered for sale, and sold. Upon information and belief, customers have bought the Accused Products from one or more stores to which Defendants directly or through the third party distribute the Accused Products.

79.     Upon information and belief, Amalfi Group, or their affiliates, import and/or re-sell the Accused Products into the United States and distribute them to their warehouses across the country where the Accused Products are advertised, promoted, offered for sale, and sold. Upon information and belief, customers have bought the Accused Products from one or more stores to which Defendants directly or through the third party distribute the Accused Products.

80.     The Accused Products also are advertised, promoted, offered for sale, sold, and transported to customers across the United States, including throughout the Western District of Texas, through their distribution and warehouse centers, brick and mortar stores and their website Defendants operate, including Wayfair.com, Amalfidecor.com, and Amalfidecor.com.au.

81.     Upon information and belief, Wayfair and Amalfi Group have done business with customers in, and with residents of, this judicial district through their distribution centers, their brick-and-mortar stores, and websites. For example, upon information and belief, customers in this judicial district have purchased the Accused Products from Wayfair or Amalfi's websites and have had the Accused Products shipped to this judicial district. Furthermore, Wayfair's and Amalfi's websites are highly interactive. For instance, online customers can create and store an online profile, purchase products (e.g., the Accused Products), input personal information (e.g., name, address, and phone number), input credit card information to pay for products, and contact Defendants for customer support. Under the authority of the Defendants, the Accused Products are advertised, promoted, offered for sale, sold, and transported to customers across the United States, including throughout the Western District of Texas, through third-party websites such as Pinterest.com, Facebook.com, and Instagram.com, which are also highly interactive websites.

82.     Defendants are not licensed to use Opulent's Designs and have no other affiliation with Opulent. Defendants are also a direct competitor with Opulent in the selling of home décor pieces.

83.     Defendants' intentional conduct is likely to cause confusion, to cause mistake, or to deceive the public and the trade by causing consumers to believe that Defendants' products originate with, or relate to, Opulent's Designs, or are licensed by, sponsored, or approved by, connected with, or associated with Opulent.

84.     Defendants' use of Opulent's Designs has caused, and will continue to cause, harm to Plaintiff.

85.     As discussed below, through these activities related to the Accused Products, Defendants infringe Opulent's trade dress rights, engage in unfair competition against Opulent, are unjustly enriched at Opulent's expense, and engage in misappropriation.

## COUNT I
### *(Federal Trademark Infringement Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

86.     All of the above paragraphs are incorporated by reference as if fully restated.

87.     Opulent's 3D Marks are inherently distinctive and continue to acquire substantial distinctiveness and goodwill in the marketplace through Opulent's use of those trade dresses in commerce. As a result of Opulent's widespread and continuous use of its trade dresses, Opulent's 3D Marks have become associated in the minds of the relevant purchasing public with Opulent. The reputation and goodwill that Opulent has built up in Opulent's 3D Marks are of great value to Opulent.

88.     In particular, the Defendants' use of Chandelier Cake Stand which is U.S. Registered mark, Reg. No. 5,912,235 as described above, unless enjoined by the Court, is likely to cause confusion with, or to cause mistake or deceive consumers as to the origin, sponsorship, or approval of, Defendants' services, products, and related commercial activities, or Opulent's services, products, and commercial activities, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

89.     Defendants' infringement of Opulent's Chandelier Cake Stand mark, and the Defendants' other actions as pleaded above, are willful, intentional, and deliberate.

90.     Defendants' unlawful conduct has caused and will continue to cause substantial injury to the public and to Opulent.

91.     The intentional and knowing nature of Defendants' trademark infringement renders this case an exceptional case, entitling Opulent to an award of costs and reasonable attorney's fees under 15 U.S. C. § 1117(a).

92.     Opulent has no adequate remedy at law.

93.     By its conduct, Defendants have violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

94.     Opulent has a right to recover Defendants' profits, damages sustained by Opulent in an amount to be proven at trial, enhanced damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114 and 1117.

## COUNT II
### (Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

95.     All of the above paragraphs are incorporated by reference as if fully restated.

96.     Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Opulent's Designs. The trade dress of the Accused Products is confusingly similar to Opulent's Designs. Defendants' use of Opulent's Designs in the Accused Products is likely to cause confusion as to the affiliation, connection, or association of Defendants with Opulent as to the origin, sponsorship, or approval of the Accused Products, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent.

97.     Opulent's Designs are entitled to protection under the Lanham Act. Opulent's Designs include unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States. Through that extensive

and continuous use, Opulent Designs have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace.

98.     Moreover, Opulent's Designs acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Product. Opulent used its trade dresses extensively and continuously before Defendants began advertising, promoting, selling, offering to sell, distributing, importing and/or re-selling the Accused Products. Opulent's Designs acquired secondary meaning in the United States, in Texas generally, and in the Western District of Texas before Defendant started unlawful use of Opulent's Designs.

99.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendant's Accused Products instead.

100.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

101.     Opulent is entitled to injunctive relief, and Opulent has a right to recover at least Defendants' profits, Opulent's actual damages, enhanced damages, costs, and reasonable attorney

fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT III**
***(Common Law Trade Dress Infringement)***

102.     All of the above paragraphs are incorporated by reference as if fully restated.

103.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute common law trade dress infringement, because Defendants' use of Opulent's Designs is likely to cause consumer confusion as to the origin or sponsorship or affiliation of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent.

104.     Opulent's Designs are entitled to protection under the common law. Opulent's Designs includes unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States and Texas. Through that extensive and continuous use, Opulent's Designs have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Products.

105.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy

Defendants' Accused Products instead.

106.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown in, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

107.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Opulent's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## COUNT IV
### *(Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*

108.     All of the above paragraphs are incorporated by reference as if fully restated.

109.     Based on the activities described above, including, for example, Defendants' advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, importing and/or re-selling the Accused Products, Defendants have diluted, are diluting, and will likely continue to dilute Opulent's famous trade dresses in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' use of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations, is likely to cause, and has caused, dilution of Opulent's famous trade dresses, at least by eroding the public's exclusive identification of Opulent's famous trade dresses with Opulent and Opulent's products, by lessening the capacity of Opulent's famous trade dresses to identify and distinguish Opulent's products, by associating Opulent's Designs with products of inferior quality, and by impairing the distinctiveness of Opulent's famous trade dresses.

110.     Opulent's Designs are famous and are entitled to protection under the Lanham Act. Opulent's Designs include unique, distinctive, and non-functional designs. Opulent's

Designs have acquired distinctiveness through Opulent's extensive and continuous promotion and use of Opulent's Designs in the United States. Through that extensive and continuous use, Opulent's Designs have become a famous well-known indicator of the origin and quality of Opulent's products throughout the United States and is widely recognized by the general consuming public as a designation of the source of Opulent's products. Opulent's Designs have also acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs became famous and acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Products.

111.    Defendants' use of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and with Opulent's Designs.

112.    On information and belief, Defendants' use of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations, has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Product to Opulent's Designs, as demonstrated in, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

113.    Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Defendants' profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

## <u>COUNT V</u>
### *(Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103)*

114.    All of the above paragraphs are incorporated by reference as if fully restated.

115.    Based on the activities described above, including, for example, Defendants' advertising, promoting, offering to sell, selling, distributing, manufacturing, importing and/or re-selling the Accused Products, Defendants have diluted, are diluting, and will likely continue to dilute Opulent's Design in violation of § 16.103 of the Texas Business & Commerce Code. Defendants' use of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations, is likely to cause, and has caused, dilution of Opulent's famous trade dress at least by eroding the public's exclusive identification of Opulent's famous trade dress with Opulent, by lessening the capacity of Opulent's famous trade dress to identify and distinguish Opulent's products, by associating Opulent's Designs with products of inferior quality, and by impairing the distinctiveness of Opulent's famous trade dress.

116.    Opulent's Designs are famous and are entitled to protection under Texas law. Opulent's Designs include unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States and in the State of Texas. Through that extensive and continuous use, Opulent's Designs have become a famous and well-known indicator of the origin and quality of Opulent's products in the United States, and in the State of Texas generally and in specific geographic areas in Texas. Opulent's Designs are widely recognized by the public throughout Texas and in specific geographic areas in Texas as a designation of the source of Opulent and its products. Opulent's Designs also have acquired substantial secondary meaning in the marketplace, including in Texas and in geographic areas in Texas. Moreover, Opulent's Designs became famous and acquired secondary meaning before Defendant started its unlawful use of Opulent's Designs in connection with the Accused Products.

117.    Defendants' use of Opulent's Designs, including through counterfeits,

reproductions, copies, or colorable imitations, has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs and with Opulent.

118.     On information and belief, Defendants' use of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

119.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Defendants' profits, actual damages, enhanced profits, and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

<u>**COUNT VI**</u>
***(Unfair Competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))***

120.     All of the above paragraphs are incorporated by reference as if fully restated.

121.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition because Defendants have obtained an unfair advantage as compared to Opulent through Defendants' use of Opulent's Designs and because such uses are likely to cause consumer confusion as to the origin or sponsorship or affiliation of Defendants' Accused Product, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent. Defendants' tortious activities have interfered with Opulent's ability to conduct its business.

122.     Opulent's Designs are entitled to protection under the Lanham Act. Opulent's Designs includes unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States. Through that extensive and continuous use, Opulent's Designs has become a well-known indicator of the origin and quality of Opulent's products. Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendants started their unlawful use of Opulent's Designs in connection with the Accused Products.

123.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

124.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

125.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Defendants' profits, Opulent's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT VII
### *(Common Law Unfair Competition)*

126.    All of the above paragraphs are incorporated by reference as if fully restated.

127.    Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute common law unfair competition by palming off and passing off of Defendants' goods, by simulating Opulent's Designs in an intentional and calculated manner likely to cause consumer confusion as to origin or sponsorship or affiliation of the Accused Products, by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent. Defendants' tortious activities have interfered with Opulent's ability to conduct its business.

128.    Opulent's Designs are entitled to protection under the common law. Opulent's Designs include unique, distinctive, and non-functional features and are inherently distinctive. Opulent has extensively and continuously promoted and used Opulent's Designs for years in the United States and Texas. Through that extensive and continuous use, Opulent's Designs have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Product.

129.    On information and belief, Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to

Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

130.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

131.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Opulent's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## COUNT VIII
### *(Unjust Enrichment)*

132.     All of the above paragraphs are incorporated by reference as if fully restated.

133.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at Opulent's expense. Defendants have also, among other things, operated with an undue advantage.

134.     Opulent created the products covered by Opulent's Designs through extensive time, labor, effort, skill, and money. Defendants have wrongfully used and are wrongfully using Opulent's Designs in competition with Opulent and has gained a wrongful benefit by undue advantage through such use. Defendants have not been burdened with the expenses incurred by Opulent, yet Defendants are obtaining the resulting benefits for its own business and products.

135.     Opulent's Designs are entitled to protection under the common law. Opulent's Designs includes unique, distinctive, and non-functional features. Opulent has extensively and

continuously promoted and used its trade dresses for years in the United States and Texas. Through that extensive and continuous use, Opulent's Designs have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired secondary meaning before Defendants started their unlawful use of Opulent's Designs and colorable imitations of them in connection with the Accused Products.

136.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs and with Opulent and Opulent's products. Opulent accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Defendants have wrongfully obtained and are wrongfully obtaining a benefit at Opulent's expense by taking undue advantage and free riding on Opulent's efforts and investments and enjoying the benefits of Opulent's hard-earned goodwill and reputation. Additionally, Defendants' use of Opulent's Designs has unjustly taken sales from Opulent because some customers that would have bought Opulent's Designs have bought Defendants' Accused Product instead.

137.     On information and belief, Defendants' unjust enrichment at Opulent's expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

138.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Defendants; profits.

## COUNT IX
### *(Common Law Misappropriation)*

139.     All of the above paragraphs are incorporated by reference as if fully restated.

140.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute common law misappropriation.

141.     Opulent created the Opulent's Designs covered by Opulent's trade dresses through extensive time, labor, effort, skill, and money. Defendants have wrongfully used Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations of them, in competition with Opulent, and gained a special advantage because Defendants were not burdened with the expenses incurred by Opulent. Defendants have commercially damaged Opulent, at least by causing consumer confusion as to origin or sponsorship/affiliation of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent, and by taking away sales that Opulent would have made.

142.     Opulent's Designs are entitled to protection under the common law. Opulent's Designs include unique, distinctive, and non-functional features. Opulent has extensively and continuously promoted and used Opulent's Design for years in the United States and Texas. Through that extensive and continuous use, Opulent's Designs have become a well-known indicator of the origin and quality of Opulent's products. Opulent's Designs have also acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendants started their unlawful use of Opulent's Designs in connection with the Accused Products.

143.     Defendants' use of Opulent's Designs, including through counterfeits,

reproductions, copies, or colorable imitations of them, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs with Opulent and Opulent's products. Moreover, as a result of their misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Opulent invested in establishing the reputation and goodwill associated with Opulent's Designs with Opulent and Opulent's products.

144.     On information and belief, Defendants' misappropriation of Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations of them, has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example **Illustrations 1 and 2** above, and by Defendants' continuing disregard for Opulent's rights.

145.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Opulent's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## APPLICATION FOR PERMANENT INJUNCTION

146.     All of the above paragraphs are incorporated by reference as if fully restated.

147.     The harm to Opulent arising from Defendants' acts is not fully compensable by money damages.

148.     On information and belief, Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their products and services are sponsored by, approved by, affiliated with, associated with, or originated by Opulent and infringe the

Opulent's Designs by using Opulent's famous trade dress or confusingly similar variations of them to identify Defendants' competitive products. All of these actions violate the Lanham Act.

149.    Under 15 U.S.C. § 1116(a), these actions entitle Opulent to a permanent injunction, upon hearing, enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all persons in active concert or in participation with Defendants from:

(a)    Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by Opulent;

(b)    Representing that Defendants are Opulent;

(c)    Using any of the Opulent's Designs or any confusingly similar variation of them, alone or combined with other designs or words, to market, advertise, or identify Defendants' products; and

(d)    Otherwise competing unfairly with Opulent or injuring its business reputation in any manner.

150.    For these actions, there is no adequate remedy at law. Further, Opulent is substantially likely to prevail on the merits of these claims. The injury to Opulent greatly outweighs any injury to Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of Opulent. Finally, the injunction will not disserve the public interest. Thus, in addition to monetary relief, Opulent is also entitled to permanent injunctive relief against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Opulent requests that this Court enter judgment in its favor and for relief against Defendants as follows:

A.  That the Court enter judgment that:

1.  Defendants violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

2.  Defendants infringed, engaged in false designation of origin, and unfair competition in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1);

3.  Defendants engaged in trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

4.  Defendants engaged in trade dress dilution in violation of Texas Business & Commerce Code § 16.103;

5.  Defendants engaged in infringement in violation of the statutory and common law;

6.  Defendants engaged in unfair competition in violation of the common law;

7.  Defendants engaged in misappropriation in violation of the common law; and

8.  Defendants were unjustly enriched.

B.  That the Court issue a permanent injunction restraining and enjoining Defendants, and all of their agents, servants, officers, employees, successors, and assigns, and all other persons or entities in active concert or participation with Defendants from:

1.  Selling, marketing, advertising, importing, or purchasing the counterfeit product (as this term is defined by § 1116(d)) and other Accused Products or colorable imitations thereof;

2.  Using any of Opulent's Designs and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols, or designs, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify any Defendants' goods or services;

3.  Otherwise infringing on Opulent's Designs;

4.  Diluting Opulent's Designs and/or 3D Marks;

5.  Representing or taking any other action likely to cause confusion, mistake, or

deception on the part of consumers as to the source or origin of Defendants' products or services or as to any authorization, sponsorship, approval, or affiliation relationship between Defendants and Opulent;

6. Unfairly competing with Opulent in any manner whatsoever or otherwise injuring its business reputation in the manner complained of herein; and

7. Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (6) above.

8. In accordance with 15 U.S.C. § 1125(b), issue an order barring importation of the Accused Product and/or colorable imitations thereof into the United States, and barring entry of the Accused Product and/or colorable imitations thereof into any customhouse of the United States.

C. That the Court enter an order pursuant to 15 U.S.C. §§ 1116, 1118 requiring Defendants, their agents, servants, officers, employees, successors, and assigns, to destroy all Accused Products or colorable imitations thereof that are in Defendants' possession, custody, or control.

D. That the Court enter an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve upon Plaintiff within 30 days after the entry of each of the preliminary and permanent injunctions a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with Paragraphs B and C, *supra*.

E. That the Court enter an order pursuant to 15 U.S.C. § 1117 awarding all profits received by Defendants from the sales and revenues of any kind made as a result of  Defendants' sales of Accused Products and colorable imitations thereof, and damages, to be determined,

that Opulent has suffered as a result of Defendants' sales and marketing of the Accused Products and colorable imitations thereof, and that damages be awarded in an amount sufficient to deter future acts of willful infringement by Defendants.

F.  That the Court enter an order, under the common law of the State of Texas, enjoining Defendants from diluting Opulent's Designs and/or Opulent's 3D Marks.

G.  Order Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all third parties to whom Defendants' have represented an ownership, affiliation, association, or sponsorship with the Opulent's Designs or confusingly similar variations of them and to whom Defendant has distributed any type of materials incorporating the Opulent's Designs or confusingly similar variations of them.

H.  Order Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all other websites and marketing materials containing the Opulent's Designs or confusingly similar variations of them.

I.  Order Defendants to immediately recall and sequester inventories of the infringing products, and provide an accounting of all sales, revenues, and profits related to Defendants' products that infringe the Opulent's Designs and/or that are falsely designated as sponsored by, approved by, affiliated with, or associated with Plaintiff.

J.  In accordance with 15 U.S.C. §§ 1117(a), 1116, 1125(a) and Tex. Bus. & Com. Code §16.104, find this case to be exceptional in Opulent's favor and award Plaintiff its reasonable attorney's fees, costs, and expenses of this action.

K.  That the Court enter an order awarding damages and costs to the fullest extent provided for

by Texas common law, including punitive damages.

L.  That the Court enter an order for disgorgement of all proceeds, and restitution of all monies received by Defendants as the result of their wrongful conduct.

M.  In the alternative and upon the Opulent's election of remedies, that the Court enter an order awarding maximum statutory damages pursuant to § 1117(c).

N.  That the Court enter an order awarding Opulent pre-judgment and postjudgment interest.

O.  That the Court enter such other damages and relief as it deems proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: January 10, 2022                     BROZYNSKI & DALTON PC


By:  */s/ Katarzyna Brozynski*
     KATARZYNA BROZYNSKI
     State Bar No. 24036277
     kasia@bdlegalgroup.com
     BART DALTON
     Texas Bar No. 24043418
     bart@bdlegalgroup.com
     5700 Tennyson Parkway, Suite 300
     Plano, Texas 75024
     Telephone:  972.371.0679

     Attorneys for PLAINTIFF
     OPULENT TREASURES, INC.