THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **OPULENT TREASURES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**WAYFAIR, LLC., AMALFI DÉCOR, LLC, SAMPAD ENTERPRISES CO. LTD, BRIAN WU, MARIA PAPAGEORGE, TOM WU, TERESA CHANG, AND DOES 1 THROUGH 10,**<br><br>Defendants. | **Civil Action No.:** 6:22-cv-00037-ADA-JCM |

## PLAINTIFF OPULENT TREASURES, INC.'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION AND FOR ASSETS RESTRAINT AGAINST DEFENDANTS AMALFI DÉCOR, LLC, SAMPAD ENTERPRISES CO. LTD, BRIAN WU, MARIA PAPAGEORGE, TOM WU, AND TERESA CHANG

Under Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff Opulent Treasures, Inc., ("Opulent") asks the Court to grant a default judgment, permanent injunction, and an asset restraint against Defendants Amalfi Décor, LLC ("Amalfi"), Sampad Enterprises Co. Ltd. ("Sampad"), Brian Wu, Maria Papageorge ("Papageorge"), Tom Wu, and Teresa Chang ("Chang") (collectively, "Defendants"). Opulent also asks the Court to grant Opulent its attorney's fees and costs against Defendants, jointly and severally, and prejudgment and post-judgment interest.[1]

---

[1] Amalfi is a California company. ECF 1, ¶5. Brian Wu and Papageorge are co-owners, officers, directors, and/or managing agents of Amalfi and are an active, moving, conscious force behind Amalfi's infringing activities. *Id.* ¶¶6-7, 60. Sampad is a Taiwanese company operating in China. *Id.* ¶8. Tom Wu and Chang are co-owners, officers, directors, and/or managing agents of Sampad. *Id.* ¶¶9-10. Sampad, Tom Wu, and Chang supply infringing products to Amalfi, Brian Wu, and Maria Papageorge. *Id.* at 61.

**Table of Contents**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 1

   A.   Legal Standard for Default Judgments ................................................................... 1

   B.   Default Judgment is Procedurally Warranted ......................................................... 2

   C.   There Is A Sufficient Basis for Default Judgment in the Pleadings ....................... 3

      1.    Federal Trademark Infringement Under 15 U.S.C. § 1114(1) ........................ 3

         a.    Strength of the Mark ...................................................................... 5

         b.    Mark Similarity and Product or Service Similarity ....................... 5

         c.    Outlet and Purchaser Identity ......................................................... 5

         d.    Advertising Media Identity ............................................................ 5

         e.    Defendants' Intent .......................................................................... 5

         f.    Actual Confusion ............................................................................ 6

         g.    Care Exercised by Potential Purchasers ........................................ 7

      2.    Trade Dress Infringement Under 15 U.S.C. § 1125(a) ................................... 7

         a.    Opulent's Well-Articulated Trade Dresses Qualify for Protection ......................... 8

         b.    Opulent's Trade Dresses are Non-Functional ................................ 9

         c.    Defendants' Use of Opulent's Trade Dresses Creates a Likelihood of Confusion. 10

      3.    Common Law Trade Dress Infringement ........................................................ 10

      4.    Trade Dress Dilution Under 15 U.S.C. § 1125(c) .......................................... 11

      **5.**    Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103 ...................... 12

      6.    Unfair Competition Under 15 U.S.C. § 1125(a) ............................................. 13

      7.    Common Law Unfair Competition .................................................................. 13

      8.    Unjust Enrichment .......................................................................................... 13

      9.    Common Law Misappropriation ...................................................................... 14

   D.   Opulent Should Receive the Requested Relief ...................................................... 15

      1.    Damages .......................................................................................................... 15

         a.    Disgorgement of Profits against Amalfi ....................................... 15

      2.    Statutory Damages .......................................................................................... 18

      3.    Costs ................................................................................................................ 20

      4.    Attorney Fees .................................................................................................. 20

      5.    Pre-judgment and Post-judgment Interest ...................................................... 21

      6.    Permanent Injunction ...................................................................................... 21

III.  CONCLUSION ........................................................................................................... 24

### <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) ................................................. 17

*All. for Good Gov't v. Coal. for Better Gov't*,
  901 F.3d 498 (5th Cir. 2018) ........................................... 4, 7, 10

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
  518 F.3d 321 (5th Cir. 2008) ............................................. 7, 17

*Amazing Spaces, Inc. v. Metro Mini Storage*,
  608 F.3d 225 (5th Cir. 2010) ........................................... 10, 11

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*,
  550 F.3d 465 (5th Cir. 2008) .............................................. 7, 8

*Better Keiki, LLC v. MairicoDirect*,
  No. 4:17-CV-00850, 2018 WL 5305571 (E.D. Tex. Aug. 29, 2018), *report and recommendation adopted sub nom. Better Keiki, LLC v. MairicoDirect, KamiroUS, DragonB Store*, No. 4:17-CV-850, 2018 WL 4520192 (E.D. Tex. Sept. 21, 2018) ................................................................. 23

*Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*,
  510 F.2d 1004 (5th Cir. 1975) ................................................ 13

*Carpenters Dist. Council v. Dillard'Dep't Stores, Inc.*,
  15 F.3d 1275 (5th Cir.1994) .................................................. 21

*Chanel, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*,
  No. 4:12-CV-2085, 2013 WL 5425252 (S.D. Tex. Sept. 26, 2013) ...................... 23

*Clearline Techs. Ltd. v. Cooper B–Line, Inc.*,
  948 F. Supp. 2d 691 (S.D. Tex. 2013) .................................... 18, 21

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
  965 F.3d 365 (5th Cir. 2020) ................................................ 13

*Dresser-Rand Co. v. Virtual Automation Inc.*,
  361 F.3d 831 (5th Cir. 2004) ................................................ 14

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) ................................................ 22

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992)................................................................13

*Holladay v. OTA Training, LLC*,
    No. 3:14-CV-0519-B, 2015 WL 5916440 (N.D. Tex. Oct. 8, 2015)..........................3

*Invasix, Inc. v. Allmond*,
    No. SA-20-CV-01135-JKP, 2021 WL 5355929 (W.D. Tex. Nov. 17, 2021) ..........................3

*Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*,
    No. 1:19-CV-618-RP, 2020 WL 6876208 (W.D. Tex. Nov. 23, 2020) ..................................2

*Lacey v. Sitel Corp.*,
    227 F.3d 290 (5th Cir. 2000) ..................................................................1

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) ................................................................22

*Lindsey v. Prive Corp.*,
    161 F.3d 886 (5th Cir. 1998) ..................................................................2

*Lowe v. Eltan, B.V.*,
    No. 9:05-CV-38, 2018 WL 7822940 (E.D. Tex. Dec. 12, 2018) ..........................21

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
    316 U.S. 203 (1942)...........................................................................18

*Mott's LLP v. Comercializadora Eloro, S.A.*,
    507 F. Supp. 3d 780 (W.D. Tex. 2020)........................................................12

*New York Life Ins v. Brown*,
    84 F.3d 137 (5th Cir. 1996) ..................................................................1

*Nishimatsu Const. Co. v. Houston Nat'l Bank*,
    515 F.2d 1200 (5th Cir. 1975) ................................................................3

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
    783 F.3d 527 (5th Cir. 2015) ..........................................................4, 5, 9, 11

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ..............................................................4, 10

*Pebble Beach Co. v. Tour 18 I Ltd.*,
    155 F.3d 526 (5th Cir. 1998) ..........................................................7, 16, 17

*Quick Techs., Inc. v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002) ..........................................................16, 17

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
    919 F.3d 869 (5th Cir. 2019) ..............................................................................15, 16, 17, 18

*Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*,
    No. A-19-CV-696-RP, 2020 WL 710198 (W.D. Tex. Feb. 12, 2020) ....................................18

*Rolex Watch U.S.A., Inc. v. Munn*,
    No. 6:19-CV-00323-JCB, 2019 WL 7500499 (E.D. Tex. Nov. 7, 2019)...............................19

*Sparrow Barns & Events, LLC v. Ruth Farm Inc.*,
    No. 4:19-CV-00067, 2019 WL 1560442 (E.D. Tex. Apr. 10, 2019).....................................23

*Springboards to Educ., Inc. v. Kipp Found.*,
    325 F. Supp. 3d 704 (N.D. Tex. 2018) ...............................................................................12

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) ..............................................................................................3

*Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*,
    799 F.3d 437 (5th Cir. 2015) ..............................................................................................8

*Texas Pig Stands, Inc. v. Hard Rock Cafe'Int'l, Inc.*,
    951 F.2d 684 (5th Cir. 1992) ............................................................................................20

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001)...............................................................................................................8

*U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Salgado*,
    No. EP-20-cv-212-PRM, 2021 WL 466142 (W.D. Tex. Feb. 8, 2021)....................................1

*United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*,
    865 S.W.2d 214 (Tex. App.—Waco 1993, *writ denied*) ......................................................14

*Viacom Int'l v. IJR Cap. Invs., L.L.C.*,
    891 F.3d 178 (5th Cir. 2018) ..............................................................................................9

*Viahart, LLC v. Does 1-54*,
    No. 6:18-CV-604-RWS-KNM, 2021 WL 777083 (E.D. Tex. Jan. 29, 2021).......................19

*VRC LLC v. City of Dallas*,
    460 F.3d 607 (5th Cir.2006) .............................................................................................22

*Wooten v. McDonald Trans. Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) ..............................................................................................3

*YETI Coolers, LLC v. Imagen Brands, LLC*,
    No. 1:16-CV-00578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017) ...............................8

*YETI Coolers, LLC v. JDS Indus., Inc.*,
  300 F. Supp. 3d 899 (W.D. Tex. 2018)......................................................................7, 8

**Statutes**

15 U.S.C.A. § 1117(b) .........................................................................................................21

15 U.S.C. 1115(a) .................................................................................................................4

15 U.S.C. § 1114(1) ..............................................................................................................3

15 U.S.C. § 1116 .................................................................................................................22

15 U.S.C. § 1117 .............................................................................................15, 18, 19, 20

15 U.S.C. § 1125 .........................................................................................................7, 11, 13

26 U.S.C. § 6621(a)(2)........................................................................................................21

28 U.S.C. § 1961(a) ............................................................................................................21

FLSA......................................................................................................................................3

Lanham Act................................................................................................................. *passim*

Tex. Bus. & Com. Code § 16.103 .......................................................................................12

**Other Authorities**

Federal Rules of Civil Procedure Rule 12 ............................................................................1

Federal Rules of Civil Procedure Rule 55 ............................................................................1

5 J. Thomas McCarthy, *Trademarks & Unfair Competition* §§ 27:18 (5th ed.
  2019) ..............................................................................................................................10, 11

# I.    INTRODUCTION

After serving the Complaint on Defendants, they did not respond. Having secured defaults against each Defendant, Opulent now asks this Court to grant a default judgment, permanent injunction, and an asset restraint against each Defendant. Opulent also asks for its attorney's fees and costs.

# II.    ARGUMENT

## A.    Legal Standard for Default Judgments

Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions under which default may be entered against a party and the procedure to seek the entry of default judgment. In addition, the Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an entry of default may be entered by the clerk when the default is established by affidavit or otherwise. FED. R. CIV. P. 55(a). Third, a plaintiff may then apply to the clerk or the Court for a default judgment. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Although entries of default judgment are generally disfavored in the law, entry of a default judgment is not an abuse of discretion when a defendant fails to answer a complaint. *Lacey v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).

To determine whether to enter a default judgment, the Fifth Circuit applies a three-part analysis: (1) whether entry of default judgment is procedurally warranted, (2) whether there is a sufficient basis for judgments in the pleadings, and (3) what form of relief, if any, a plaintiff should receive. *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Salgado*, No. EP-20-cv-

212-PRM, 2021 WL 466142, at *4 (W.D. Tex. Feb. 8, 2021).

## B.    Default Judgment is Procedurally Warranted

Default judgment is procedurally warranted here because (1) Defendants did not respond to Opulent's Complaint (2), the Clerk of the Court has entered default against Defendants, and (3) the six factors used in the Fifth Circuit for determining a default judgment favor a default judgment. *See* ECF Nos. 23, 26, 26-1, 30. More specifically, these six factors are considered:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

These six factors are present here. First, there are no material issues of fact because each Defendant did not contest Opulent's well-pleaded facts. *See* ECF No. 23. Second, there is substantial prejudice to Opulent because Defendants' failure to respond has brought the proceedings against Defendants to a halt. *See Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*, No. 1:19-CV-618-RP, 2020 WL 6876208, at *2 (W.D. Tex. Nov. 23, 2020) ("Leon's failure to appear and respond has ground the adversary process to a halt, prejudicing JHP's interest in pursuing its claim for relief."). Third, the grounds for default are established here because Defendants have not responded, and the Clerk of the Court has entered default. *See* ECF No. 23.

Fourth, there is no good faith mistake nor excusable neglect by Defendants that led to their default. Again, each Defendant was properly and timely served with the Complaint. *See* ECF Nos. 17, 20, 27. Defendants also did not try to respond or seek an extension of time to respond. As a result, default was entered by the Clerk of the Court. *See* ECF Nos. 23, 26, 26-1, 30.

Fifth, default judgment here is not exceedingly harsh. Opulent is only seeking relief that it

is entitled to by law, as clarified below in Section II.D., *infra*. *See Holladay v. OTA Training, LLC*, No. 3:14-CV-0519-B, 2015 WL 5916440, at *2 (N.D. Tex. Oct. 8, 2015) ("Plaintiff only seeks the relief to which she is entitled under the FLSA, mitigating the harshness of a default judgment against Defendants.").

Finally, Defendants cannot show good cause to set aside the default because there no facts to justify its failure to respond or defend the allegations. *See Boost*, 2012 WL 12881968, at *4 ("the Court is not obliged to set aside the default on Defendant's motion. The sixth Lindsey factor is a 'catch-all' factor that is subsumed by the other five factors.").

**C.    There Is A Sufficient Basis for Default Judgment in the Pleadings**

There is sufficient basis for default judgment in the pleadings for each of Opulent's causes of actions because each claim meets the *Twombly/Iqbal* pleading standard. "[W]hen considering a motion for default judgment, the court must determine whether those facts state a claim upon which relief may be granted, as '[t]here must be a sufficient basis in the pleadings for the judgment entered.'" *Invasix, Inc. v. Allmond*, No. SA-20-CV-01135-JKP, 2021 WL 5355929, at *4 (W.D. Tex. Nov. 17, 2021) (quoting *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In addition to the complaint, the court may consider evidence that adds only 'factual details,' thereby fleshing out the plaintiff's claim, or that serves as 'further proof' of the plaintiff's allegations." *Id.* (quoting *Wooten v. McDonald Trans. Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015)).

1.    Federal Trademark Infringement Under 15 U.S.C. § 1114(1)

To succeed on a claim of trademark infringement under the Lanham Act, a plaintiff must show: (1) that it owns a "legally protectable trademark," and (2) that a defendant's use of their mark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod.*

3

*Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).

Opulent has established ownership rights of a legally protectable mark in U.S. Registration No. 5,912,235, registered November 19, 2019 ("'235 Mark"). *See* ECF No. 1-1 at 4; *see also* 15 U.S.C. 1115(a). This registration describes the mark and outlines the extent of the protected trade dress. *See* ECF No. 1-1 at 4. Further, Opulent has established secondary meaning in the '235 Mark.[2] *See id.*; *see also* ECF No. 1 at 6, ¶20-12, ¶48, 48, ¶87. Second, Opulent has shown that Defendant's use of the Chandelier Cake Stand, product nos. CS310SG, CS310SR, CS310SS, CS310SC, CS310SW, CS310SPK, CS310STB, CS310SLA, CS310SBL, CS310SLM, CS330SY, CS330SG, CS330SR, CS330SS, CS330SW, CS330SPK, CS330SRED, LED001AW, LED001AG, and LED001AS creates a likelihood of confusion as to the source, affiliation, or sponsorship of these products. *See* ECF No. 1, at 18, Illustration 1. While courts typically examine the non-exhaustive "digits of confusion" in evaluating likelihood of confusion,[3] here Defendants have used the same mark on the aforementioned products. *See* ECF No. 1, at 18, Illustration 1. Defendants do not dispute this. *See* ECF. Nos. 23, 26, 26-1, 30. So each digit of confusion need not be analyzed. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) ("Because the Appellants used Paulsson's exact marks, we hold that the district court did not err as a matter of law in its digits of confusion analysis."). There is thus a likelihood of confusion between the '235 Mark and the above products.

Still, an analysis of the digits of confusion leads to the same result.

---

[2] The registration of the mark on the Principal Register is *prima facie* evidence of validity and ownership of the mark. *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 537 (5th Cir. 2015) ("The registration of Haydel's marks with the PTO is *prima facie* evidence that the marks are inherently distinctive.").

[3] *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 506 (5th Cir. 2018) ("(1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.").

*a. Strength of the Mark*

Opulent's '235 Mark is strong, as shown by its secondary meaning, which supports likelihood of confusion. *See* ECF No. 1 at 6, ¶20-12, ¶48, 48, ¶87. Further, the '235 Mark is registered on the Principal Register, which is *prima facie* evidence of the mark's distinctiveness and creates a rebuttal presumption that the mark is non-functional. *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) ("The registration of Haydel's marks with the PTO is *prima facie* evidence that the marks are inherently distinctive.").

*b. Mark Similarity and Product or Service Similarity*

As discussed, Defendants are using and have been using an exact copy of the '235 Mark on virtually identical products. *See* ECF No. 1, at 18, Illustration 1. This fact supports likelihood of confusion.

*c. Outlet and Purchaser Identity*

Both Opulent and Defendants sell their products on their own respective websites and on the websites of major retailers including Amazon and Wayfair, and advertise on Pinterest, which directs to other websites to buy the products. *See* ECF No. 1 at 7, ¶26, 17, ¶68. Further, Opulent and Defendants are direct competitors with a business history of targeting the same purchasers. *See id.* at 13-17, ¶49-68, 48 ¶85. This weighs in favor of likelihood of confusion.

*d. Advertising Media Identity*

The parties use the same form of advertising media, including websites such as Pinterest, Wayfair, Houzz, and Amazon. *See* ECF No. 1 at 6-7, ¶¶24-26, at 17, ¶68. This supports a finding of likelihood of confusion.

*e. Defendants' Intent*

Defendants were fully aware of Opulent's intellectual property rights. Sampad, a former

manufacturer of Opulent's designs since 2004, exploited this business relationship by manufacturing counterfeit and knock offs of Opulent's Designs to be sold and distributed by Sampad's owner's son, Brian Wu, and Papageorge. ECF No. 1 at 13, ¶¶49-51, and at 14-15, ¶¶54-57. Brian Wu and Papageorge incorporated Amalfi to engage in these infringing activities. ECF No. 1 at 15, ¶¶60-62. The parties reached agreements in 2012, 2014, and again later in 2018 where Defendants not only acknowledged Opulent's rights to its trade dresses but agreed not to sell counterfeits and knock-offs. ECF No. 1 at 13-14, ¶¶52-54, 16 ¶65. Defendants also knew of Opulent's asserted intellectual property rights, agreed not to engage in activities infringing on these rights, and then did so anyways. Amalfi further contacted Opulent's corporate buyers to sell them products substantially or confusingly similar to Opulent's designs under the infringing Amalfi brand. ECF No. 1 at 16, ¶63. Moreover, Amalfi contacted longtime Opulent customers offering them goods and discounts to woo them from Opulent towards Amalfi. *Id.* Even after being served with this lawsuit, Amalfi's sales of the Accused Products continued. *See* Declaration of Shelly Irvine ¶9 ("Sales of Accused Products continued into July, 2022").

This behavior makes it clear that Amalfi's intent has been to trade off the goodwill of Opulent and to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Accused Products with Opulent. That Sampad supplied Amalfi with infringing products despite its knowledge of Opulent's intellectual property rights shows that Sampad similarly intended to harness Opulent's goodwill. Defendants' intent weighs heavily for a likelihood of confusion.

###### f.   Actual Confusion

Because Defendants have defaulted and Opulent could not conduct discovery, *see* ECF. Nos. 23, 26, 26-1, 30, Opulent was denied the opportunity to find evidence of actual confusion.

But such evidence is "'not necessary to a finding of likelihood of confusion.'" *Alliance for Good Gov't*, 901 F.3d at 513 (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 333 (5th Cir. 2008). This factor is therefore neutral.

>    g.  *Care Exercised by Potential Purchasers*

The Accused Products sold for about $60, on average. *See* Declaration of Shelly Irvine ¶9; *see also generally,* Exhibit A. The Accused Products are inexpensive, so a buyer would take less care in selecting the items thereby increasing the likelihood of confusion. *See Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*., 550 F.3d 465, 483 (5th Cir. 2008) ("Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion.").

On balance, Opulent has adequately pleaded and showed the Accused Products would likely be confused with the '235 Mark.

>    2. <u>Trade Dress Infringement Under 15 U.S.C. § 1125(a)</u>

"To succeed on an infringement or unfair competition claim under the Lanham Act, a plaintiff must establish three elements. First, the plaintiff must establish 'that the mark or trade dress, as the case may be, qualifies for protection.'" *YETI Coolers, LLC v. JDS Indus., Inc*., 300 F. Supp. 3d 899, 907 (W.D. Tex. 2018) (quoting *Pebble Beach Co. v. Tour 18 I Ltd*., 155 F.3d 526, 536 (5th Cir. 1998). "To qualify for legal protection, the trade dress must be inherently distinctive or have achieved secondary meaning in the public's mind; that is, it must have 'come through use to be uniquely associated with a specific source.'" *Id.* "Second, the plaintiff must show that the defendant's use of the trade dress creates 'a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship' of the defendant's product or service." *Id.* (quoting *Smack Apparel Co.*, 550 F.3d at 478). "Third, trade dress is only entitled to legal

protection if it is nonfunctional." *Id.* (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)). "In addition to those elements, a plaintiff must articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *Id.* (internal quotations omitted).

### a.  *Opulent' s Well-Articulated Trade Dresses Qualify for Protection*

First, the trade dresses in Opulent's Designs are well-articulated in the Complaint. For example, "Chandelier Cake Stand consists of a decorative display table embodying these features: ornate paneling surrounding the circumference of the tabletop; beads and crystals encircling the table and dangling from the ornate paneling; and a multi-grooved fluted base." ECF No. 1 at 9-10, ¶35; *see also id.*, ¶¶21, 32 table 1, 35 table 2. Further, "[t]he ornate paneling with or without jewels that is part of Opulent's protected design and is what makes Opulent's trade dress recognizable to consumers." *Id.* at 10, ¶35. The ornate paneling, beads, crystals and grooved bases are used throughout Opulent's Designs. *See* ECF No. 1 at 9-10, ¶35; *see also id.*, ¶¶21, 32 table 1, 35 table 2. Thus, Opulent has sufficiently articulated its trade dresses in the Complaint. *See id.*; *see also YETI v. JDS Indus.*, 300 F. Supp. 3d at 911; *see also YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, at *2-4 (W.D. Tex. May 18, 2017).

Second, each of the trade dresses in Opulent's Designs qualify for protection. Courts consider these seven factors to determine whether a mark has acquired secondary meaning: "(1) length and manner of use of the mark, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark in newspapers and magazines, (5) consumer survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the [mark]." *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc*., 799 F.3d 437, 445 (5th Cir. 2015) (quoting *Smack Apparel*, 550 F.3d at 476) (alteration in original).

In its Complaint, Opulent established secondary meaning in its trade dresses addressing the above factors. *See* ECF No. 1 at 6-12, ¶¶20-48. For example, the Complaint alleged facts about: the length and manner of use of the mark, *see* ¶¶20-22, 32 Table 1, Illustration 1; volume of sales, *see* ¶¶25-26; amount and manner of advertising, *see* ¶¶24-26; nature of use of the mark in newspapers and magazines, *see* ¶24; and direct consumer testimony, *see* ¶¶33-36. While the Complaint does not have consumer survey evidence, as the Fifth Circuit has held, "'survey evidence is not required to establish secondary meaning.'" *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 191 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 544 (5th Cir. 2015)). Finally, as discussed, the Defendants have manufactured, advertised, and sold copies of Opulent's trade dresses, which shows their intent to copy Opulent's Trade Dresses supports secondary meaning. *See* Section II.C.1.e., *supra*.

###### b.  Opulent's Trade Dresses are Non-Functional

Opulent has shown that its Trade Dresses are non-functional. For example, Opulent's Trade Dresses "consist of non-functional design elements, are not essential to the use or purpose of the products, do not affect their cost or quality, and are not the reason the products work. Moreover, the ornamental aspects of the arrangement and combination of the features are arbitrary and non-functional." ECF No. 1 at 8, ¶32. Further, "[i]n creating its products, Opulent has always sought to add charm, elegance, and stunning beauty to each customer's special occasions and celebrations." *Id.* at 6, ¶20. "[T]he popularity of Opulent's Designs has steadily grown throughout the United States. Its unique decorative pieces are coveted by wedding and event planners as well as individual consumers looking to bring a sophisticated look to their events, gatherings, and homes." *Id.* at 6, ¶22. Thus, Opulent's Trade Dresses are non-functional.

c.  *Defendants' Use of Opulent's Trade Dresses Creates a Likelihood of Confusion*

Again, while courts typically examine the non-exhaustive "digits of confusion" in evaluating likelihood of confusion,[4] here Defendants have used the same trade dresses on the aforementioned products. *See* ECF No. 1, at 18, Illustration 1. Defendants do not dispute this. *See* ECF. Nos. 23, 26, 26-1, 30. Thus, each digit of confusion need not be analyzed. *See Paulsson*, 529 F.3d at 311 ("Because the Appellants used Paulsson's exact marks, we hold that the district court did not err as a matter of law in its digits of confusion analysis."); There is therefore a likelihood of confusion between Opulent's Designs and the Accused Products. Even so, an analysis of the digits of confusion leads to the same result.

For the first digit of confusion, the strength of Opulent's Designs, this strength has been adequately pleaded in the Complaint and favors likelihood of confusion. *See* ECF No. 1 at 6, ¶20-12, ¶48, 48, ¶87. Further, Opulent has established secondary meaning in Opulent's Designs. *See* Section II.C.2.a., *supra.* Therefore, Opulent has established that Opulent's Designs are strong, which supports a likelihood of confusion. The analysis of the remaining digits of confusion are identical to that set out in Section II. C. 1. b-g, *supra*, analyzing the digits of Confusion for the '235 Mark. As with the '235 Mark, Opulent has adequately pleaded and showed the Accused Products would likely be confused with Opulent's Designs.

3.  <u>Common Law Trade Dress Infringement</u>

Infringement claims under Texas common law are analyzed under the same framework as federal trademark law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010). "The same substantive law applies to adjudge the infringement of registered and unregistered mark." 5 J. Thomas McCarthy, *Trademarks & Unfair Competition* §§ 27:18 (5th ed.

---

[4] *All. for Good Gov't*, 901 F.3d at 506.

2019). Opulent has established trade dress infringement under federal trademark law, *see* Section II.C.2 *supra*. Thus, Opulent has established trade dress infringement under the common law. *See id.*; *see also Amazing Spaces*, 608 F.3d at 236 n.7.

    4.  <u>Trade Dress Dilution Under 15 U.S.C. § 1125(c)</u>

"To state a dilution claim under the Lanham Act, [plaintiff] must show that (1) it owns a famous and distinctive mark; (2) [defendant] has commenced using a mark in commerce that is diluting [plaintiff's] mark; (3) the similarity between [defendant's] mark and [plaintiff's] mark gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of [plaintiff's] mark or harm the reputation of [plaintiff's] mark." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 548 (5th Cir. 2015).

Opulent owns distinctive trade dresses as discussed above. *See* Section II.C.2.a. These trade dresses are famous. *See* ECF No. 1. For example, "just through the trend-ideas sharing website, Pinterest.com, Opulent's 'pins' have engaged with nearly thirty million individuals." *Id.* at 6, ¶24. Further, "Opulent has received unsolicited media attention several times from outlets including Romantic Homes, Buzzfeed, Prime Living, C Magazine, U.S. Weekly, among others. Opulent's products have also been featured on multiple television networks, including QVC, Bravo, Nickelodeon, HGTV, as well as on programs such as the Today Show, The Real Housewives, Keeping Up With The Kardashians, and Vanderpump Rules." *Id.* at 6-7, ¶24. "These trade dresses have acquired secondary meaning and have become famous in the United States, in Texas, and in this District." *Id.*

Defendants are using these trade dresses, thus diluting Opulent's trade dresses. *See e.g.*, ECF No. 1 at 13-33. For example, "Platinum Home Designs and Amalfi Décor were founded on the business model of reproducing Opulent's Designs and weaking the Opulent brand." *Id.* at 15,

¶62. Some who purchased from Amalfi Décor knew that Amalfi Décor was dishonestly built upon Opulent's creativity, incalculable investment, and established market reputation." *Id.* at 16, ¶63. "Defendants Sampad, Tom Wu, and Teresa Chang continue to manufacture and supply the Accused Products for Defendants Amalfi Décor, Brian Wu, and Maria Papageorge." *Id.* at 15, ¶61. "Amalfi Group's actions have gutted Opulent while Amalfi Group continues to operate unabated selling unauthorized reproductions of Opulent's Designs." *Id.* at 16-17, ¶66. Thus, Opulent's Complaint establishes that Defendants have diluted Opulent's Trade Dresses.

The similarity between Defendants' products and Opulent's Trade Dresses also leads to an association between the two. As shown in Illustration 1 of the Complaint, the side-by-side comparison of the Accused Products with Opulent's Trade Dresses shows the confusing similarity between the two. *See* ECF No. 1 at 18-33. For example, Amalfi and its principals, Brian Wu and Papageorge, used the same manufacturer that Opulent uses for its products, Sampad. *see id.* at 13-15. The Accused Products and Opulent's Designs are also sold through the same retailers. *See id.* at 7, ¶26; 17, ¶68. Thus, this third element has been met.

The association is likely to impair the distinctiveness of Opulent's Trade Dresses or harm the reputation of Opulent's Trade Dresses. Thus, Opulent has met this final element and thereby established federal trademark dilution.

**5.** Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103

"Asserting a claim under the Texas Anti-Dilution Statute implicates the same standards as the Lanham Act under 15 U.S.C. §§ 1114, 1125." *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018). As discussed, *supra*, Opulent has established federal trademark dilution under the Lanham Act. Opulent's fame nationally has been adequately pleaded, and fame on a state level is a lower bar than fame at a national level. *Mott's LLP v.*

*Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 788 (W.D. Tex. 2020) ("It is much more difficult to demonstrate that a trademark is famous on the national level as opposed to the state level.") Thus, Opulent has proved the liability of Defendants under the Texas Anti-Dilution Statute.

6. Unfair Competition Under 15 U.S.C. § 1125(a)

"As a general rule…the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). Opulent has established trade dress infringement. *See id.*; *see also* Section II.C.2., *supra*. Thus, Opulent has proved its claim for unfair competition under 15 U.S.C. § 1125(a).

7. Common Law Unfair Competition

"As a general rule…the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston Prof'l Hockey*, 510 F.2d at 1010. As with common law trade dress infringement, Opulent has established common law unfair competition. *See id.*; *see also* Section II.C.3., *supra*.

8. Unjust Enrichment

"Under Texas law an unjust enrichment claim requires showing that one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 379 (5th Cir. 2020) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Opulent has proved this cause of action as well. As pleaded in the Complaint, Defendants have benefited from Opulent by taking undue advantage. *See* ECF No. 1 at 59-60. Opulent created the products covered by Opulent's Designs through extensive time, labor, effort, skill, and money.

*Id.* at 59, ¶134. Defendants have wrongfully used and are wrongfully using Opulent's Designs in competition with Opulent and has gained a wrongful benefit by undue advantage through such use. *Id.* Defendants have not been burdened with the expenses incurred by Opulent, yet Defendants are obtaining the resulting benefits for its own business and products. *Id.* Further, Defendants used the same manufacturer as Opulent who copied or modified Opulent's Designs without permission and without incurring the time, labor, skill, and expense. *Id.* at 15-16, ¶62. Thus, Opulent has proved this cause of action.

9. <u>Common Law Misappropriation</u>

Similarly, Opulent has proved its cause of action for common law misappropriation. "The elements of a cause of action for unfair competition by misappropriation in Texas are: '(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff.'" *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (quoting *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, *writ denied*).

First, Opulent has spent extensive time, labor, skill, and money to create Opulent's Designs. For example, Opulent has worked since 1995 to develop Opulent's designs, spent time, effort, and hundreds of thousands of dollars create Opulent's Designs and to build the fame, reputation, and goodwill of Opulent's Designs. *See* ECF. No. 1 at 6-12.

Second, Defendants have wrongfully used Opulent's Designs, including through counterfeits, reproductions, copies, or colorable imitations of them, in competition with Opulent,

14

and gained a special advantage because Defendants were not burdened with the expenses incurred by Opulent. These counterfeits, reproductions, copies, or colorable imitations of Opulent's Designs are shown in Illustration I in the Complaint. *See* ECF No. 1 at 18-33.

Third, Defendants have also commercially damaged Opulent, at least by causing consumer confusion as to origin or sponsorship/affiliation of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent, and by taking away sales that Opulent would have made. Thus, Opulent has proved this final cause of action.

**D.    Opulent Should Receive the Requested Relief**

1. <u>Damages</u>

Opulent conducted expedited discovery on gross profits made by Amalfi on the third parties' platforms. To the extent Opulent got the subpoenaed record, it has included this record in the overall calculation of the gross revenues unlawfully gained by Amalfi.

a. *Disgorgement of Profits against Amalfi*

Under 15 U.S.C. § 1117, Opulent seeks disgorgement of profits for $ 1,540,472, awarding all profits received by Amalfi from the sales and revenues of any kind made because of Amalfi's sales of Accused Products and colorable imitations of them and that damages be awarded in an amount sufficient to deter future acts of willful infringement by Defendants. *See* Declaration of Shelly Irvine ¶16; *see also* Exhibit B, Amalfi Sales Data on Amazon; Exhibit C, Amalfi Sales Data on eBay; Exhibit D, Amalfi Sales Data on Walmart; Declaration of Michael Licker (Amalfi Sales Data on Wayfair).

In the Fifth Circuit, disgorgement of profits is appropriate where it is equitable and where the profits to be disgorged are attributable to the Lanham Act violation. *Retractable Techs., Inc. v.*

*Becton Dickinson & Co.*, 919 F.3d 869, 876 (5th Cir. 2019). Whether disgorgement of profits is equitable is determined by analysis of the *Pebble Beach* factors: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. *Id.* (citing *Pebble Beach* Co. v. Tour 18 I Ltd., 155 F.3d 526, 554 (5th Cir. 1998)).

### Pebble Beach Factors

The first *Pebble Beach* factor supports disgorgement of profits. In *Romag Fasteners, Inc. v. Fossil, Inc.*, the Supreme Court showed that willfulness is not a prerequisite to an accounting of profits following a Lanham Act violation, but "a highly important consideration in determining whether an award of profits is appropriate." 140 S.Ct. 1492, 1497 (2020). An infringement is willful if done "voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002). Section 1117(a) of the Lanham Act "affords wide discretion to the district court to apply principles of equity when a claim for profits is made." *Quick Techs.,* 313 F.3d at 350. Amalfi's intent to confuse and deceive has been shown by their actions and this intent is bolstered by their refusal to appear. This intent has been outlined in Section II.C.1.e. *supra*.

The second *Pebble Beach* factor also supports disgorgement of profits. There has been a diversion of sales as a result of Defendants' infringement. The parties sell through the same platforms, and Amalfi has deliberately targeted customers of Opulent. ECF No. 1 at 16, ¶63. Both Opulent and Amalfi sell and advertise their products on the same major retailers including Amazon, Wayfair, and Pinterest. *See* ECF No. 1 at 7, ¶26, 17, ¶68. Further, Opulent and Amalfi are direct competitors targeting the same purchasers. *See id.* at 16, ¶63.

The third *Pebble Beach* factor similarly supports disgorgement of profits. Opulent has no doubt lost sales as result of Defendant's infringement, but only part of the exact sales was established through Opulent serving third-party subpoenas. Further, the losses to Opulent's goodwill and reputation are impossible to determine. Courts award disgorgements of profits to remedy unjust enrichment and deter future infringement. *Quick Techs*., 313 F.3d at 349. Even if a fraction of what the total disgorgement might be, disgorgement of Defendants' profits (as established through the reliable subpoenas' record) will properly redress the injury suffered by Opulent and deter Defendants and other infringers from causing similar injury in the future.

The fourth *Pebble Beach* factor likewise supports disgorgement of profits. There has not been unreasonable delay by Opulent in asserting its rights. "[A]n inexcusable delay that results in prejudice to the defendant" can justify the bar of monetary relief. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013) (internal citations omitted) (discussing laches). Plaintiff seeks disgorgement only of profits made within the statutory period of 4 years before filing the lawsuit. *See* McCarthy § 31:23. Nor have Defendants appeared and have therefore made no argument that they have suffered prejudice.

The fifth *Pebble Beach* factor further supports disgorgement of profits. Infringers should not profit from their infringing conduct. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 338 (5th Cir. 2008). It is in the public interest for this infringing conduct to be made unprofitable.

The sixth *Pebble Beach* factor additionally supports disgorgement of profits. Palming off applies when an infringer "attempts to pass of its goods" as the markholder's. *Retractable Techs, Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 881 (5th Cir. 2019). Amalfi has used Opulent's exact trade dress to sell products. Amalfi knowingly copied Opulent's trade dress to capitalize on Opulent's reputation and goodwill. ECF No. 1 at 16, ¶66. Amalfi intentionally targeted Opulent

customers. ECF No. 1 at 16, ¶63. Amalfi's blatant disregard for Opulent's rights shows Amalfi wanted to pass off its products as Opulent goods. Thus, the "palming off" factor is satisfied.

## **Attribution**

Disgorgement of profits is appropriate for only the profits attributable to the Lanham Act violation. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 876 (5th Cir. 2019). But "the burden is on the infringer to prove: (1) which, if any, of those sales were not attributable to the wrongful act; and (2) deductible costs and expenses to arrive at net profits." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, No. A-19-CV-696-RP, 2020 WL 710198, at *5 (W.D. Tex. Feb. 12, 2020) quoting (*Clearline Techs. Ltd. v. Cooper B–Line, Inc.*, 948 F. Supp. 2d 691, 707 (S.D. Tex. 2013)); *see also* McCarthy § 30:66. The principle was established decades ago by the Supreme Court. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark.") Amalfi has failed to appear and has made no showing that its sales were not attributable to the wrongful act. So all its sales are attributable to their violation of the Lanham Act.

But even if Amalfi had appeared, it could not show that these sales were not attributable to the wrongful act. The sales for which disgorgement of profits are sought are products featuring Opulent's trade dress.

2. Statutory Damages

In the alternative to disgorgement of profits against Amalfi, Opulent seeks statutory damages allowed under 15 U.S.C. § 1117(c) for Trademark Counterfeiting of Opulent's '235 Mark against Amalfi for the maximum amount of $2,000,000.

Similarly, against Sampad, Brian Wu, Papageorge, Tom Wu, and Chang, Opulent seeks statutory damages allowed under 15 U.S.C. § 1117(c) for Trademark Counterfeiting of Opulent's '235 Mark. Opulent seeks statutory damages for $100,000 against each: Sampad, Brian Wu, Papageorge, Tom Wu, and Chang, totaling $500,000.

Because Defendants have acted willfully, Opulent has a right to receive statutory damages under 15 U.S.C. § 1117(c)(2). *Rolex Watch U.S.A., Inc. v. Munn*, No. 6:19-CV-00323-JCB, 2019 WL 7500499, at *4 (E.D. Tex. Nov. 7, 2019). Generally, "courts have considered the following factors in setting statutory damage awards" in trademark infringement:

> (1) expenses saved and profits reaped; (2) revenues lost by plaintiff; (3) the value of the [trademark]; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants.

*Viahart, LLC v. Does 1-54*, No. 6:18-CV-604-RWS-KNM, 2021 WL 777083 (E.D. Tex. Jan. 29, 2021), *report and recommendation adopted,* No. 6:18-CV-604-RWS-KNM, 2021 WL 765216 (E.D. Tex. Feb. 26, 2021),'*aff'd sub nom. Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022) (citations omitted).

First, Amalfi's sales are at least for $1,540,972.[5] As stated above, Amalfi's true sales are far greater than this, as this amount does not include Amalfi's sales through its own website and its sales through third-party sites other than Amazon, Ebay, Walmart, and Wayfair, such as Shopify. Amalfi's refusal to appear and defend itself has made determining the full amount unduly burdensome. The profits of the other Defendants have similarly been made unduly burdensome to obtain by their refusal to appear. Second, Opulent has no doubt lost sales as result of Defendant's infringement. Further, the losses to Opulent's goodwill and reputation are impossible to determine.

---

[5] This number reflects Amalfi's sales across the infringing products, not just those that are technically "Counterfeits" under the definition of the Lanham Act.

Third, Opulent's Chandelier Cake Stand trade dress is valuable. Defendants' investment in the sale of counterfeit versions of Opulent's products is compelling evidence for the high value of Opulent's marks. Without the valuable goodwill Opulent created, the Defendants' investment in counterfeiting would not be worthwhile.

For the fifth and sixth factors, Defendants' conduct was willful from their knowledge of Opulent's intellectual property rights and the history between the parties. Further, they have not appeared, cooperated, or defended themselves. For the fourth and seventh factors, the infringement by Defendants has given the wrongful impression to third parties that Opulent's trade dress may be freely copied. Given Opulent's years-long efforts to protect this trade dress, such a misperception in the marketplace is damaging to Opulent. An award of substantial statutory damages is an important part of clearing up this misperception among third parties and discouraging Defendants from engaging in these activities again.

3. Costs

Under 15 U.S.C. § 1117 Opulent requests an award of costs of $**3,745.65** against every Defendant jointly and severally. *See* Declaration of Katarzyna Brozynski, ¶14.

4. Attorney Fees

Under 15 U.S.C. § 1117 Opulent requests that the Court make a specific finding of an exceptional case given that Defendants acted in a "'malicious,' 'fraudulent,' 'deliberate,' or 'willful[]'" manner. *Texas Pig Stands, Inc. v. Hard Rock Cafe'Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). Defendants were fully aware of Opulent's intellectual property rights and willfully infringed. This intent has been outlined in Section II.C.1.e. *supra*.

As a result, Opulent requests attorney's fees in the amount of $**98,564.00** against Defendants, jointly and severally. *See* Declaration of Katarzyna Brozynski, ¶¶1-13.

20

5. Pre-judgment and Post-judgment Interest

Opulent seeks pre-judgment and post-judgment interest as allowed by law, for prejudgment

interest at the rate in 26 U.S.C. § 6621(a)(2) and post-judgment interest under 28 U.S.C. § 1961(a).

The Lanham Act explicitly authorizes prejudgment interest for counterfeit marks. 15

U.S.C.A. § 1117(b). Further, prejudgment interest is generally available for Opulent's Lanham

Act claims. An award of prejudgment interest is permissible (1) if the federal statute creating the

cause of action does not preclude such interest, and (2) if an award of prejudgment interest would

further the policies underlying the statute. *See, Carpenters Dist. Council v. Dillard'Dep't Stores,

Inc.*, 15 F.3d 1275, 128[8] (5th Cir.1994). The Fifth Circuit has not spoken on the question of when

prejudgment interest ought to be awarded for violating the Lanham Act. *See Lowe v. Eltan, B.V.*,

No. 9:05-CV-38, 2018 WL 7822940, at *10 (E.D. Tex. Dec. 12, 2018) (discussing standard for

prejudgment interest and finding award of prejudgment interest is appropriate.), report and

recommendation adopted in part, No. 9:05-CV-38, 2019 WL 493806 (E.D. Tex. Feb. 8, 2019); *see

also Clearline Technologies Ltd. v. Cooper B–Line, Inc.*, 948 F. Supp. 2d 691, 712 (S.D. Tex.

2013). Several district courts within the Fifth Circuit have followed the Seventh and Tenth Circuit

approach that "in analyzing claims under the Lanham Act, that prejudgment interest should be

presumptively available to victims of federal law violations." *Id.* (collecting cases). Prejudgment

interest is therefore appropriate here.

Opulent is also entitled to post-judgment interest under 28 U.S.C. § 1961(a), which states

that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district

court." 28 U.S.C. § 1961(a).

6. Permanent Injunction

Opulent requests a permanent injunction against Defendants. "'The party seeking a

21

permanent injunction must ... establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.'" *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016) (quoting *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir.2006).

First, as discussed throughout this Motion, Opulent has succeeded on the merits of its claims. *See* Section II.C., *supra*. Second, a plaintiff seeking an injunction "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction…" 15 U.S.C. § 1116. Since Opulent has prevailed on the merits, *see* Section II.C., *supra,* and Defendants have not rebutted this presumption because of their default, irreparable harm has been established. *See id.* In addition, there is no adequate remedy at law available. Both Amalfi's chief officer and owner and Sampad owners (who are husband and wife and parents of Brian Wu) are citizens of China. Any monetary damages will be difficult, if not impossible to collect. Also, the confusion among consumers in the marketplace cannot be remedied by the payment of damages, nor can the harm to Opulent's reputation. The hardships greatly favor Opulent since its Chandelier Cake Stand is Opulent's flagship product and is synonymous with Opulent's brand.

Third, "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991). Given Defendants' knowledge of Opulent's intellectual property interests, Defendant's continued use of Opulent's Designs through the sale of the Accused Products is therefore at its own risk and any damage to Defendants resulting from their infringing activities merit little equitable consideration.

Thus, Opulent's injury outweighs any damage to Defendants.

Finally, his requirement is met here because "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, No. 4:19-CV-00067, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019).

Because Opulent meets all four factors required for permanent injunction, Opulent's request for permanent injunction should be granted. Opulent's proposed language for permanent injunction, if the Court grants this equitable and statutory relief, is submitted as Exhibit A.

7. Opulent's Request for Asset Restraint

Also, Opulent requests an asset restraint order: (a) enjoining Defendants and all people in active concert or participation with them from transferring Defendants' assets except to satisfy the damages and fee award due to Opulent; and (b) requiring third parties to transfer to Opulent such assets as are necessary to satisfy the monetary award due to Opulent. Other federal district courts in Texas have included similar asset restraint requirements in permanent injunctions for trademark infringement. *See Better Keiki, LLC v. MairicoDirect,* No. 4:17-CV-00850, 2018 WL 5305571 (E.D. Tex. Aug. 29, 2018), *report and recommendation adopted sub nom. Better Keiki, LLC v. MairicoDirect, KamiroUS, DragonB Store*, No. 4:17-CV-850, 2018 WL 4520192 (E.D. Tex. Sept. 21, 2018) (prohibiting defendants and those working with them from withdrawing funds from Amazon accounts; requiring Amazon to disable access to seller IDs and stop fulfillment of counterfeit goods); *Chanel, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*, No. 4:12-CV-2085, 2013 WL 5425252, at *5 (S.D. Tex. Sept. 26, 2013) (requiring third parties like PayPal to transfer funds from defendants' accounts to plaintiff to satisfy monetary award).

Opulent asks that such asset restraint of Defendants' accounts be granted.

## III.    CONCLUSION

For all these reasons, Plaintiff Opulent Treasures, Inc. asks the Court to grant this motion, enter default judgment and a permanent injunction against Defendants, restrain assets in Defendants' accounts, award Plaintiff attorney's fees and costs and any further relief to which Plaintiff maybe justly entitled.


DATED: October 7, 2022                    BROZYNSKI & DALTON, PC


                                    By:  */s/ Katarzyna Brozynski*
                                         KATARZYNA BROZYNSKI
                                         State Bar No. 24036277
                                         kasia@bdlegalgroup.com
                                         BART DALTON
                                         Texas Bar No. 24043418
                                         bart@bdlegalgroup.com
                                         5700 Tennyson Parkway, Suite 300
                                         Plano, Texas 75024
                                         Telephone:  972.371.0679
                                         Fax: 972.637.9185

                                         Attorneys for PLAINTIFF
                                         OPULENT TREASURES, INC.


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this document was served on all parties who have appeared in this case on October 7, 2022, via the Court's CM/ECF system.

                              */s/ Katarzyna Brozynski*
                              Katarzyna Brozynski


24